2010 WY 80

David D. FREUDENTHAL, Governor of the State of Wyoming, and Dr. Brent Sherard, Director of the Department of Health, in their capacity as custodian of records, Appellants (Defendants),

v.

CHEYENNE NEWSPAPERS, INC.,
a Wyoming corporation,
Appellee (Plaintiff).

Cheyenne Newspapers, Inc., a Wyoming corporation, Appellant (Plaintiff),

v.

David D. Freudenthal, Governor of the State of Wyoming, and Dr. Brent Sherard, Director of the Department of Health, in their capacity as custodian of records, Appellees (Defendants).

Nos. S–09–0183, S–09–0184.

Supreme Court of Wyoming.

June 22, 2010.

Representing Appellants in Case No. S–09–0183: Bruce A. Salzburg, Wyoming Attorney General.

Representing Appellee in Case No. S–09–0183: Bruce T. Moats of Law Office of Bruce T. Moats, P.C., Cheyenne, Wyoming.

Representing Amicus Curiae Wyoming Education Association, Equality State Policy Center and Wyoming Trial Lawyers Association in Case No. S–09–0184: Patrick E. Hacker and Erin M. Kendall of Hacker, Hacker & Kendall, P.C., Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Declining mineral revenue required the Governor of the State of Wyoming, David D. Freudenthal (the Governor), to request budget reduction plans from all state agencies. Claiming the budget reduction plans were public records under Wyoming's Public Records Act (WPRA), Wyo. Stat. Ann. §§ 16–4–201 through 16–4–205 (LexisNexis 2009), Cheyenne Newspapers, Inc. (the Newspaper) requested copies of the plans the Department of Family Services (DFS) and the Department of Health submitted to the Governor. The Governor denied the request asserting the plans fell within a deliberative process privilege incorporated in the WPRA.

[¶ 2] The Newspaper petitioned the district court for access to the budget reduction plans. After an in camera review of the plans, the district court held they were not the sort of documents to which the privilege would apply. As to whether the WPRA incorporated the privilege, the district court opined that the better policy would be to recognize the privilege where the facts warranted it.

[¶ 3] The Governor and the director of the Department of Health, Dr. Brent Sherard, (collectively the State) appealed the district court's ruling that the privilege did not apply and the plans must be disclosed. The Newspaper cross appealed, asserting Wyoming has not and should not recognize the deliberative process privilege within the WPRA. We affirm the district court's ruling that the documents requested must be disclosed. As to the district court's comments that the privilege should be recognized, we conclude this case does not present the appropriate occasion to decide whether or not the deliberative process privilege is incorporated into the WPRA.

## ISSUES

[¶ 4] The State presents the following issue in its appeal:

Whether the documents sought to be inspected by the Newspaper fall within the

deliberative process privilege incorporated in Wyo. Stat. Ann. § 16–4–203(b)(v).

The Newspaper restates the issue as follows:

Whether the budget reduction plan of the Department of Health submitted to the Governor would fall within the deliberative process privilege if the privilege is adopted in Wyoming.

In its cross appeal, the Newspaper states the following issue:

Whether Wyoming courts should recognize the evidentiary privilege against discovery of information regarding the deliberative process of government decisionmakers, and, if so, in what form.

The State rephrases the issue as follows:

Whether Wyo. Stat. Ann. § 16–4–203(b)(v), which exempts "[i]nteragency or intraagency memoranda or letters which would not be available by law to a private party in litigation with the agency" from required disclosure under the Wyoming Public Records Act, incorporates the "deliberative process privilege."

## FACTS

[¶ 5] The 2008 Consensus Revenue Estimating Group (CREG) reports projected falling prices for Wyoming produced minerals indicating a likely decline in state mineral revenue. On November 25, 2008, the Governor advised all executive agency heads and the 2009 Wyoming Legislature of the predicted revenue shortfalls. He requested all agency heads to prepare a contingent budget reduction plan.

[¶ 6] On February 12, 2009, the Governor renewed his request, and directed all agencies to submit budget reduction plans by May 5, 2009, incorporating both a five and ten percent reduction in general fund appropriations. On May 5, 2009, the Newspaper verbally requested DFS's budget reduction plan pursuant to the following WPRA provision:

§ 16–4–202. Right of inspection; . . . .

(a) All public records shall be open for inspection by any person at reasonable times, except as provided in this act or as otherwise provided by law . . . .

[¶ 7] The Governor's office denied the request stating the documents were in draft form. The Newspaper then made verbal requests to DFS as well as the Department of Health to inspect their budget reduction plans. Again, the Governor's office denied the requests. The Newspaper requested a written statement explaining the grounds for the denial. The Governor issued a written explanation for the denial citing the following WPRA provision:

§ 16–4–203. Right of inspection; grounds for denial; . . . .

. . . .

(b) The custodian may deny the right of inspection of the following records, unless otherwise provided by law, on the ground that disclosure to the applicant would be contrary to the public interest;

. . . .

(v) Interagency or intraagency memoranda or letters which would not be available by law to a private party in litigation with the agency[.]

[¶ 8] On May 22, 2009, the Newspaper petitioned the district court for access to the records previously requested. The Newspaper also sought an order to show cause naming the Governor, Dr. Sherard and DFS director Tony Lewis as defendants.[1] On June 18, 2009, the district court issued an Order to Show Cause directing the State to submit the disputed documents to the court, under seal, for in camera review.

[¶ 9] After reviewing the documents, the district court issued its decision letter in which it stated:

It is the opinion of this Court that it would be better policy to recognize the privilege where the facts warrant it. The more immediate question is whether the documents at issue in this case create facts that warrant application of the privilege.

The district court concluded the documents did not fall within the privilege because they were essentially spread sheets showing the

1. In addition to the Governor, Mr. Lewis and Dr. Sherard are the custodians of records pertaining to the budget reduction recommendations.

various programs, current allocations, recommended reductions and the impact of those reductions. Concluding that the information contained in the plans was purely factual and contained no personal opinion or advice about policy-making, the district court ordered the State to produce the documents. In the final paragraph of its decision letter, the district court stated:

> Because the executive should have the most frank, unrestrained exchange of opinions with close advisors before making critical decisions, Wyoming law should recognize the deliberative process exception to the right to inspect documents. Because it would be an exception to strong and important public policy, it must be narrowly applied and sparingly invoked. Given these limitations, the materials in question cannot qualify for the privilege.

The district court entered an order consistent with its decision letter. The parties timely appealed.[2]

## STANDARD OF REVIEW

[¶ 10] The district court's conclusions that the deliberative process privilege should be recognized in Wyoming and that the documents at issue did not fall within the deliberative process privilege are conclusions of law, are not binding on this Court and are reviewed *de novo*. *Pagel v. Franscell*, 2002 WY 169, ¶ 7, 57 P.3d 1226, 1229 (Wyo.2002).

## DISCUSSION

### 1. The Deliberative Process Privilege, Generally

[¶ 11] As with the perhaps better known presidential privilege,[3] the deliberative process privilege is intended to promote the flow of information within the executive branch of government. Edward J. Imwinkelried, *The New Wigmore A Treatise on Evidence*, 1312 (2d ed.2010). While the presidential privilege is a narrow conditional privilege for communications involving the President, his advisors, and their White House staff, the deliberative process privilege applies more broadly to intergovernmental communications by executive officials in general. *Id.* at 1336.

[¶ 12] The deliberative process privilege was first recognized in *Kaiser Aluminum & Chemical Corp. v. United States*, 141 Ct.Cl. 38, 157 F.Supp. 939 (1958). After the government sold three aluminum production plants to Reynolds Metals, Kaiser sued claiming the government breached the most favored purchaser clause of the parties' contract. *Id.* at 941. Kaiser sought production in discovery of a document which the government refused to produce on the grounds it contained opinions rendered to the agency head by a member of his staff that did not reflect the position of the agency, and its disclosure would discourage agency staff from giving candid advice and impede effective agency administration. *Id.* at 943. In deciding whether the government properly withheld the document, the court of claims began by noting that the question of "whether or not, or to what extent, there is a 'privilege' against the discovery of information in the possession of the Government is an unsettled question." *Id.* at 945. Referencing a "public policy" of "open, frank discussion between subordinate and chief concerning administrative action," the court of claims concluded that "confidential intra-agency advisory opinions ... belong to that class of governmental documents that are privileged from inspection as against public interest." *Id.* at 946.

---

2. After accepting DFS's plan in its entirety, the Governor provided it to the Newspaper; therefore, the parties stipulated to dismissing Mr. Lewis as a defendant.

3. The existence of a presidential privilege was suggested in *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803) where in dictum the Court indicated the attorney general would not be required to answer questions concerning confidential communications with the President. However, the existence of the presidential privilege was not settled until *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), in which the Court affirmed the denial of a motion to quash a subpoena directing the President to produce tape recordings of his conversations with his advisors. The Court held the President did not have an absolute, unqualified privilege of immunity from judicial process. Rather, the general privilege of confidentiality must yield upon a showing of specific need for evidence in a pending criminal case.

[¶ 13] The privilege first recognized in *Kaiser* came to be known as the deliberative process privilege. Courts have characterized it as a common law doctrine established by a long line of cases. *Sprague Electric Co. v. U.S.*, 81 Cust.Ct. 168, 462 F.Supp. 966, 971 (1978); *Colorado Springs v. White*, 967 P.2d 1042, 1047 (Colo.1998).[4] After Congress enacted the 1966 Freedom of Information Act, 5 U.S.C. § 552, the federal courts generally construed it as incorporating the deliberative process privilege by way of § 552(b)(5), which provides in language nearly identical to § 16–4–203(a)(v), that a government is not required to disclose "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *Environmental Protection Agency v. Mink*, 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973).

[¶ 14] Despite the cases interpreting FOIA, the original draft of the Federal Rules of Evidence did not include a provision incorporating the deliberative process privilege. Imwinkelried, *supra*, at 1337. In fact, Congress rejected a later revision to the FRE recognizing the privilege. *Id.* Thus, the FRE approved by Congress in 1975 did not include any codification of the deliberative process privilege and the privilege remains a creature of case law.

[¶ 15] In *Mink*, one of the leading FOIA cases recognizing the privilege, a Congresswoman sought production of recommendations a departmental under-secretary made to the President concerning the advisability of a scheduled underground nuclear test. The President denied the request in part on the basis of FOIA Exemption 5. Citing *Kaiser*, 157 F.Supp. at 946, the Court stated:

> [T]he legislative history of Exemption 5 demonstrates that Congress intended to incorporate generally the recognized rule that "confidential intra-agency advisory opinions... are privileged from inspection."

*Mink*, 410 U.S. at 86, 93 S.Ct. at 836. The Court quoted Congressional reports reflecting that in discussing Exemption 5, legislators were concerned "that it would be impossible to have any frank discussion of legal or policy matters in writing if all such writings were to be subjected to public scrutiny" and "efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to 'operate in a fishbowl.'" *Id.* at 87, 93 S.Ct. at 836. Concluding that Congress intended Exemption 5 to incorporate the deliberative process privilege, the Court remanded the case for determination of whether the documents fell within the privilege.

[¶ 16] Since *Mink*, the question of whether particular records are exempt from public inspection on the basis of the deliberative process privilege incorporated within FOIA has been addressed by numerous federal circuit and district courts. *See, for example, Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C.Cir.2004); *Grand Central P'ship, Inc. v. Cuomo*, 166 F.3d 473, 481 (2d Cir.1999); *K.L. v. Edgar*, 964 F.Supp. 1206, 1208 (N.D.Ill.1997). Among the reasons given for recognizing the privilege in the context of FOIA's Exemption 5 are that the privilege protects the flow of ideas within government agencies, allows candid discussion and free exploration of ideas and improves governmental decision-making by taking official deliberations out of a fishbowl. *Id.; Sun–Sentinel Co. v. U.S. Dep't of Homeland Sec.*, 431 F.Supp.2d 1258 1277 (S.D.Fla. 2006). The United States Supreme Court reiterated the rationale for the privilege within the context of FOIA's Exemption 5 most recently in *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9, 121 S.Ct. 1060, 1066, 149 L.Ed.2d 87 (2001):

> there were only a handful of cases recognizing the deliberative process privilege when the Federal Rules of Evidence were adopted in 1975; federal courts developed the privilege only in the last two decades; and the privilege began spreading to states only recently.

---

4. As some legal authorities have noted, this characterization may not be entirely accurate. *See, for example,* 26A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure: Evidence* § 5680 (1992), stating there was little authority for any privilege for communications between government officials forty years ago;

The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance "the quality of agency decisions" by protecting open and frank discussion among those who make them within the Government.

[¶ 17] In recent years, some state courts have adopted the rationale of FOIA cases to support incorporating the deliberative process privilege within their state's public records laws. *See, e.g., Stromberg Metal Works, Inc. v. Univ. of Maryland,* 382 Md. 151, 854 A.2d 1220, 1227 (2004); *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 360 (Tex.2000); *City of Colorado Springs,* 967 P.2d at 1051; *Capital Info. Group v. Office of the Governor,* 923 P.2d 29, 33–34 (Alaska 1996); *Gould v. New York City Police Dep't,* 89 N.Y.2d 267, 653 N.Y.S.2d 54, 675 N.E.2d 808, 812 (N.Y.Ct.App.1996); *Times Mirror Co. v. Superior Court,* 53 Cal.3d 1325, 283 Cal.Rptr. 893, 813 P.2d 240, 248–49 (1991). Other state courts have declined to recognize a deliberative process privilege within their state statutes. *State of Illinois ex rel. Birkett v. City of Chicago,* 184 Ill.2d 521, 235 Ill.Dec. 435, 705 N.E.2d 48, 53 (1998), concluding that "in light of the range of competing policies underlying the deliberative process privilege, its adoption should be left to the General Assembly," and *Sands v. Whitnall School Dist.,* 312 Wis.2d 1, 754 N.W.2d 439, 458 (2008), declining to recognize the privilege because state statute requires common law privileges not originating in the constitution to be adopted by statute or court rule and state laws reflect a strong policy of transparency and access.

[¶ 18] This Court has not addressed the issue of whether the deliberative process privilege is incorporated within the WPRA. However, we have addressed the WPRA, and the policy behind it, in a number of cases. In *Laramie River Conservation Council v. Dinger,* 567 P.2d 731 (Wyo.1977), this Court noted the similarities between FOIA and § 16–4–203(b)(v) and held that the policy behind the WPRA, like that behind FOIA, is one of disclosure, not secrecy, meaning the

exemptions are to be narrowly construed. *Id.* at 733. The Court said: "The legislature of this state has stressed the importance of making available to the public" agency records. *Id.* The Court stated further: "With some necessary exceptions, recognized by Wyoming's records and meetings acts, state agencies must act in a fishbowl." *Id.* at 734. *See also, Allsop v. Cheyenne Newspapers, Inc.,* 2002 WY 22, ¶ 10, 39 P.3d 1092, 1095–96 (Wyo.2002), reiterating that the WPRA speaks to the philosophy of disclosure and, with some necessary exceptions, requires state agencies to act in a fishbowl.

[¶ 19] In *Sheridan Newspapers, Inc. v. City of Sheridan,* 660 P.2d 785 (Wyo.1983), this Court emphasized that "the public's business" should be open to the public whenever possible and "[t]he courts, legislature, administrative agencies, and the state, county and municipal governments should be ever mindful that theirs is public business and the public has a right to know how its servants are conducting its business." *Id.* at 791. We cautioned that newspaper, television and radio are "the eyes and ears of the people" and the citizenry must have access to what public officers and employees are doing unless disclosure would cause legally recognized harm. *Id.* We cited the WPRA and the open meetings statutes, Wyo. Stat. Ann. §§ 9–11–101 to 9–11–107 (1977) renumbered as Wyo. Stat. Ann. §§ 16–4–401 through 16–4–408 (LexisNexis 2009), as examples of legislative intent to maintain an open and accountable government. *Sheridan Newspapers,* 660 P.2d at 792. We said statutes relating to public access to public records should be liberally construed and that any doubt should be resolved in favor of disclosure. *Id.* at 793. Unless withholding public records is authorized by statute, we said:

> The language of the [WPRA] imposes a legislative presumption which says that, where public records are involved, the denial of inspection is contrary to the public policy, the public interest and the competing interests of those involved.

*Id.* at 796.

[¶ 20] In *Houghton v. Franscell,* 870 P.2d 1050 (Wyo.1994), we reiterated our prior statements that the WPRA is intended to

promote disclosure, not secrecy. Quoting Norman J. Singer, 3 *Sutherland Statutory Construction* § 60.01 (5th ed.1992), we concluded legislation requiring disclosure of information is considered remedial, and

> [r]emedial statutes are liberally construed to suppress the evil and advance the remedy. The policy that a remedial statute should be liberally construed in order to effectuate the remedial purpose for which it was enacted is firmly established.

*Id.* at 1052. We said:

> [A]n open and accountable government is particularly important with respect to the expenditure of public funds. Members of the public have a legitimate interest in the operation of the county hospital and in the amount the community is spending to attract health care providers.

*Id.* at 1056. And:

> Given the overriding public interest in the full disclosure of information of expenditure of public finds, any legislative restriction on the disclosure of such public information must be expressly textual.

*Id.*

[¶ 21] Citing these cases, the Newspaper asserts recognition of the deliberative process privilege within the WPRA would be contrary to Wyoming's longstanding policy in favor of open and accessible government. The Newspaper contends there is no language in the WPRA incorporating the privilege and for this Court to conclude otherwise would require reading words into the Act. The Newspaper further contends the deliberative process privilege is largely a creation of federal case law interpreting FOIA, which although persuasive in some instances, is not binding on this Court when considering Wyoming law. While conceding that language in the federal law is nearly identical to language contained in the WPRA, the Newspaper asserts there are two important differences weighing heavily against recognition of the privilege in the WPRA context. First, § 16–4–203(b) requires the custodian of the public record to weigh the public interest in withholding the record against the state's policy of open government while FOIA contains no similar requirement. Second, while FOIA's legislative history indicates Congress expressly anticipated that some sort of governmental privilege would apply through Exemption 5, there is no indication the Wyoming Legislature considered the deliberative process privilege when it adopted the WPRA. In fact, the Newspaper points out, when the legislature enacted the WPRA in 1969, *Mink* had not yet been decided and *Kaiser*, a pre-FOIA decision, was one of only a few cases recognizing a privilege applicable to governmental decision making. The Newspaper also urges this Court to consider the reasoning of other states which have refused to adopt the "deliberative process" privilege because it is "detrimental to the search for truth central to our adversary process." *Sands*, 754 N.W.2d at 458. In the event we recognize the privilege, the Newspaper insists this Court narrowly tailor it to the specific purposes of § 16–4–203(b)(v).

[¶ 22] The State contends the district court correctly concluded the WPRA encompasses the deliberative process privilege, thereby allowing government officials to withhold documents that would not be available to a private party in litigation with the agency. The State directs our attention to federal and other state court decisions interpreting virtually identical statutory language that have recognized the privilege. The State correctly points out that federal and state case law is saturated with explanations of how the deliberative process privilege encourages frank and honest communication. The State asserts the same compelling state interests leading to recognition of the deliberative process privilege in other states are present in Wyoming rendering the district court's holding appropriate and correct. The State notes this Court has stated that parallel language between a Wyoming statute and federal statute makes it appropriate to examine persuasive authority, particularly federal cases. *Sublette County Rural Health Care Dist. v. Miley*, 942 P.2d 1101, 1103 (Wyo. 1997).

[¶ 23] The issue the parties ask this Court to decide is an important and complex one. Reflecting the importance of public access to information, we have quoted the writings of two of this Country's founders, Thomas Jefferson:

The people are the only censors of their governors; ... give [the people] full information of their affairs through the channel of the public papers, and to contrive that those papers should penetrate the whole mass of the people; [W]ere it left to me to decide whether we should have a government without newspapers, or newspapers without a government, I should not hesitate a moment to prefer the latter.

And James Madison:

A Popular Government, without popular information, or the means of acquiring it is but a Prologue to a Farce or a tragedy; or perhaps both. Knowledge will forever govern ignorance; and the people who mean to be their own Governors, must arm themselves with the power which knowledge gives.

*Houghton,* 870 P.2d at 1057. Other writers have addressed the importance of evidentiary privileges. In his two-volume, 2000 plus page treatise, Imwinkelried begins by stating:

[P]rivilege law is arguably the most important doctrinal area in the law of evidence .... [It] concerns "extrinsic social policy." From society's perspective, "the rules governing privileges" can be "justifiably viewed as the most important" evidentiary doctrines.

Imwinkelried, *supra,* at 3.

[¶ 24] The complexities involved in determining whether the WPRA incorporates the deliberative process privilege are apparent from the foregoing discussion of its development. From the plain language of the WPRA, it is clear the legislature intended public records to be open for inspection by any person unless exempted from public inspection by the WPRA or other law. There is no language in the WPRA expressly stating that documents may be withheld from the public on the basis of the deliberative process privilege. We are not aware of, and the State does not cite, any other Wyoming statute or court rule incorporating the privilege.

[¶ 25] Like the federal courts' interpretation of FOIA Exemption 5, the State argues the basis for the privilege is found in § 16–4–203(b)(v), which exempts from disclosure if contrary to the public interest "interagency or intraagency memoranda or letters which would not be available by law to a private party in litigation with the agency." The WPRA contains no provision explaining what the legislature meant by documents "which would not be available by law to a private party in litigation with the agency." Pursuant to Rule 26(b) of the Wyoming Rules of Civil Procedure, however:

Parties may obtain discovery regarding *any matter, not privileged,* that is relevant to the claim or defense of the party seeking discovery or to the claim or defense of any party.

(Emphasis added). If § 16–4–203(b)(v) is read in conjunction with W.R.C.P. 26(b), it would appear that *privileged* inter- and intra-agency memoranda are exempt from disclosure under the WPRA. By statute, Wyoming recognizes six privileges, including attorney-client, physician-patient, priest- or clergyman-confessor and husband and wife.[5]

---

5. **§ 1–12–101. Privileged communications and acts.**

(a) The following persons shall not testify in certain respects:

(i) An attorney or a physician concerning a communication made to him by his client or patient in that relation, or his advice to his client or patient. The attorney or physician may testify by express consent of the client or patient, and if the client or patient voluntarily testifies the attorney or physician may be compelled to testify on the same subject;

(ii) A clergyman or priest concerning a confession made to him in his professional character if enjoined by the church to which he belongs;

(iii) Husband or wife, except as provided in W.S. 1–12–104;

(iv) A person who assigns his claim or interest concerning any matter in respect to which he would not be permitted to testify if a party;

(v) A person who, if a party, would be restricted in his evidence under W.S. 1–12–102 shall, where the property is sold or transferred by an executor, administrator, guardian, trustee, heir, devisee or legatee, be restricted in the same manner in any action or proceeding concerning the property;

(vi) A confidential intermediary, as defined in W.S. 1–22–201(a)(viii), concerning communications made to him or information obtained by him during the course of an investigation pursuant to W.S. 1–22–203, when the public interests, in the judgment of the court, would suffer by the disclosure.

There is no reference in the statute to a deliberative process privilege applicable to inter-agency or intra-agency communications.

[¶ 26] The State contends the deliberative process privilege is incorporated into § 16–4–203(b)(v) by virtue of the English common law which the legislature adopted in Wyo. Stat. Ann. § 8–1–101 (LexisNexis 2009).[6] The Wyoming judiciary likewise has adopted the common law with respect to privileges by way of WRE 501.[7] The State further asserts this Court has the authority to determine "what the common law is." *See Briefing.com v. Jones,* 2006 WY 16, ¶¶ 12–14, 126 P.3d 928, 935–36 (Wyo.2006); *Spriggs v. Cheyenne Newspapers,* 63 Wyo. 416, 182 P.2d 801, 806 (1947).

[¶ 27] In a line of cases spanning sixty years this Court has stressed that it will recognize the common law as modified by judicial decisions, accepting the interpretation that best fits the time and this jurisdiction. *Nulle v. Gillette–Campbell County Joint Powers Fire Bd.,* 797 P.2d 1171, 1172 (Wyo.1990), citing *In re Smith's Estate,* 55 Wyo. 181, 97 P.2d 677, 681 (1940). We have expressed a reluctance to recognize, or continue recognition of, a common law rule that had its genesis in a social, economic and political climate entirely foreign to Wyoming in current times. *Id.* Thus, when deciding whether to accept a particular common law rule, we evaluate whether developments in the law are consistent with our policies and precedent. *Id.* at 1173.

[¶ 28] The State asserts the deliberative process privilege existed in 1607 English common law as a derivative of the "crown privilege;" therefore, the legislature necessarily adopted the deliberative process privilege when it adopted the common law. We disagree. Any "crown privilege" had its gen-

esis in a social, economic and political climate entirely foreign to Wyoming in 2010. Moreover, as the State concedes, there was no statute or common law principle in 1607 granting a right to inspect the king's records.

[¶ 29] The State contends, irrespective of English common law, the deliberative process privilege is part of this Country's common law by virtue of *Kaiser* and its progeny. Because the legislature and this Court have adopted the common law, the State asserts, we must construe § 16–4–203(b)(v) together with the common law as recognized in *Kaiser,* meaning agency records are exempt if they are pre-decisional and deliberative and would not be available by law to a private party in litigation. The State cites to other federal and state court decisions that have taken this approach.

[¶ 30] The Newspaper argues the rationale other courts have given for recognizing the deliberative process privilege in the context of public records has been rejected by this Court as contrary to Wyoming's policy of open government. In addition to this Court's interpretations of the WPRA, the Newspaper cites the legislature's amendment to the Public Meetings Act. The Newspaper argues the legislature affirmed its position that open government is better government when it amended the definition of "meeting" in § 16–4–402(a)(iii), to include "discussion, *deliberation* [and] presentation of information." 1995 Wyo. Sess. Laws 207–08 (emphasis added). With the amendment, meetings previously closed to the public because they were deliberative and did not involve final action such as a vote, came within the definition of meetings that must be open to the public. The Newspaper cites this Court's recent statement that this legislative change

---

6. **§ 8–1–101. Adoption of common law.**

The common law of England as modified by judicial decisions, so far as the same is of a general nature and not inapplicable, and all declaratory or remedial acts or statutes made in aid of, or to supply the defects of the common law prior to the fourth year of James the First ... and which are of a general nature and not local to England, are the rule of decision in this state when not inconsistent with the laws thereof, and are considered as of full force until repealed by legislative authority.

7. **Rule 501. General rule.**

Except as otherwise required by constitution or statute or by these or other rules promulgated by the Supreme Court of Wyoming, the privilege of a witness, person, government, state, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the State of Wyoming in the light of reason and experience.

clearly indicates the intent to ensure agency deliberations occur during a public meeting. *Cheyenne Newspapers, Inc. v. Bldg.Code Bd. of Appeals,* 2010 WY 2, ¶ 16, 222 P.3d 158, 164 (Wyo.2010).

[¶ 31] As the foregoing discussion reflects, deciding whether or not the WPRA incorporates the deliberative process privilege requires consideration of Wyoming statutory law and legislative intent, this Court's previous pronouncements concerning the WPRA, the common law, federal law interpreting FOIA and the degree to which the latter sources should influence our interpretation of state law. Given our conclusion, discussed in the next section, that the documents at issue in this case would not fall within the privilege in any event, we decline to decide whether the WPRA incorporates the privilege. A decision by this Court today that the WPRA would, in the appropriate case, incorporate the deliberative process privilege would have no effect on these litigants in this case and would be merely advisory. *See, e.g., Voss v. Goodman,* 2009 WY 40, ¶ 5–7, 203 P.3d 415, 418 (Wyo.2009) (stating courts cannot issue advisory opinions or adjudicate hypothetical questions). Moreover, it is axiomatic that in applying any evidentiary privilege, a court must consider the nature of the particular documents in the context of the litigation and assure the protection provided is as limited as it can be. This is especially true with regard to this privilege in light of the potential for its abuse by agencies and the clear legislative preference for making governmental records public. A case in which the documents at issue are not the kind of confidential intra-agency opinions protected by the privilege and, therefore, must be released for public inspection does not provide the appropriate circumstance for this Court to establish the parameters of the privilege in the event we were inclined to recognize it under Wyoming law.

[¶ 32] To quote Imwinkelried, *supra,* at 3–4:

It is no secret that in selecting cases to decide, the [United States] Supreme Court tends to choose cases that potentially have a significant social impact. Since World War II, privilege cases have had a prominent place on the Court's docket. For example, privilege rulings have figured in many of the major constitutional confrontations between branches of government, including Watergate during the Nixon Administration, Iran–Contra during the G.H.W. Bush Administration, the battle between President Clinton and Independent Counsel Kenneth Starr, and the efforts to obtain the records of Vice President Cheney's National Energy Policy Development Group during the G.W. Bush Administration. It should come as no surprise then that since the adoption of the Federal Rules of Evidence in 1975, the Supreme Court has handed down more decisions relating to privilege law than concerning any other part of the Federal Rules.

Given the importance of privilege law, and this State's clear legislative policy favoring open and accessible government, we will wait to decide whether the WPRA incorporates the deliberative process privilege when we are presented with a case in which it is shown that the records sought to be disclosed would fall within the privilege. In the meantime, if the legislature wishes to expressly incorporate the deliberative process privilege in the WPRA, we presume it will act to do so.

### 2. Scope of the Deliberative Process Privilege

[¶ 33] Among jurisdictions that recognize the deliberative process privilege, its scope is limited generally to communications between executive officials that are both pre-decisional and deliberative. *Mapother v. Dep't of Justice,* 3 F.3d 1533, 1537 (D.C.Cir.1993). It extends to any executive branch employee participating in a particular policy decision; the communication must be intra-governmental, but can be either inter-agency or intra-agency; and the official may be elected or appointed. Imwinkelried, *supra,* at 1345. The privilege protects only pre-decisional materials, not final decisions. *Id.* at 1346.

[¶ 34] For the privilege to apply, "the document must be generated while the government agency is engaged in a legitimate deliberative process." *Id.* at 1350. As stat-

ed in *Kaiser,* 157 F.Supp. at 947, application of the privilege is limited to "intra-agency advisory opinions" and does not apply to "primary facts upon which conclusions are based." A document is privileged if its disclosure would "lay bare the discussion and methods of reasoning of public officials" and withholding it is necessary to "protect free discussion of prospective operations and policy." *Id.* As summarized by Imwinkelried, *supra,* at 1350–54, the deliberative process privilege protects only material reflecting

> integral parts of the decision-making process—suggestions, advisory opinions, recommendations, projections, proposals, and deliberations. The material must reflect "personal opinions" and "ruminations about how to exercise discretion on some policy matter." To be protected, the material must document the interactive "give-and-take of the consultative process."....
>
> ....
>
> [A]s a general proposition, the deliberative process privilege does not protect "purely" factual information ... [unless] the factual data is so inextricably intertwined with the deliberative portions of the report that the two sections cannot be feasibly severed.

[¶ 35] The task of determining whether a particular document falls within the deliberative process privilege because it contains advisory opinions, deliberations or the exercise of discretion on some policy, or is instead outside the scope of the privilege because it contains purely factual information, can be difficult. *Trentadue v. Integrity Committee,* 501 F.3d 1215, 1227 (10th Cir.2007). Determining whether the privilege applies is dependent upon the particular document and its role in the administrative process. *Id.,* citing *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 867 (D.C.Cir.1980). In *Mink,* 410 U.S. at 87–88, 93 S.Ct. at 836–37, the U.S. Supreme Court distinguished between factual information and deliberative materials as follows:

> [T]he privilege that has been held to attach to intragovernmental memoranda clearly has finite limits, even in civil litigation. In each case, the question was whether production of the contested document would be "injurious to the consultative functions

of government that the privilege of nondisclosure protects." *Kaiser Aluminum & Chemical Corp., supra,* at 946. Thus, in the absence of a claim that disclosure would jeopardize state secrets, (citation omitted) memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government.

[¶ 36] Since *Mink,* courts have reached varying results when applying the factual/deliberative distinction. The Ninth Circuit, for example, has exempted even factual materials from disclosure when they reveal the mental processes of decision-makers. *National Wildlife Federation v. U.S.F.S.,* 861 F.2d 1114, 1119 (9th Cir.1988). In *Trentadue,* 501 F.3d at 1228, however, the Tenth Circuit said:

> Information is not protected simply because disclosure would reveal some minor or obvious detail of an agency's decision making process. Were that the test, Exemption 5 would swallow FOIA entirely. It is difficult to imagine a document that would not divulge some tidbit regarding an agency's deliberative process. Moreover, the ... overly broad reading is contrary to our duty to construe FOIA's exemptions narrowly.
>
> Consistent with our sister circuits, we hold that factual information may be protected under Exemption 5 under certain narrow circumstances: when disclosure would so expose the deliberative process within an agency that it must be deemed exempted.

 [¶ 37] In the present case, the district court reviewed the documents and stated:

> It is the view of the Court that the documents at issue simply are not of the sort to which the [privilege] applies. [The State's] own cited standards include a requirement that the material be actually related to deliberation or policy-making as opposed to factual or informational. The plan or proposal of the Department of Health does not fit that description. The documents amount to spreadsheets show-

ing for the various programs and activities presently authorized amounts of money, the amounts as reduced by 5% and 10%, funding source for the various programs, and finally, under a column labeled "Impact" the agency's statement, in general terms, of what would be the result for the program or activity if the amount allocated were to be diminished. Not surprisingly, it says that certain services offered by the Department would be reduced. It suggests no adverse consequences for others.

It appears that restrictions in the amount of some services if the funds allocated for them are reduced would be almost a foregone conclusion. That is, there appears to be little by way of personal opinion or advice offered by the agency head individually. Indeed, the materials do not identify an individual writer.

The material appears not to be predominantly opinions about policy-making by way of recommendations for prioritization. While it indicates curtailments of some programs or services if the funding for them is reduced, it does not weigh, or evaluate the relative merits of reducing one service at the expense of another, for example. It appears not to be the sort of close, personal opinion advice contemplated by cases that apply the privilege.

[¶ 38] Having considered the documents the State submitted for in camera review we agree that the plans essentially provide factual information rather than advisory opinions or deliberative thought processes. The spread sheets show dollar amounts, recommended cuts and the potential impact of those cuts. They do not contain personal opinion or advice nor do they reveal information about how the agency decided which program budgets should be cut. We conclude "disclosure would [not] 'so expose the deliberative process within an agency' " that the records must be withheld from public inspection. *Trentadue*, 501 F.3d at 1228. Borrowing language from *Kaiser*, 157 F.Supp. at 947, we conclude disclosure would not "lay bare the discussion and methods of reasoning of public officials" and withholding the documents is not necessary to "protect free discussion of prospective operations and

policy." Even under the broadest interpretation, the plans do not fall within the deliberative process privilege.

## CONCLUSION

[¶ 39] We affirm the district court's ruling that the budget reduction plans the State withheld must be released to the Newspaper. The plans contain factual information, rather than opinions, deliberations or thought processes and are not, therefore, the sort of documents protected by the deliberative process privilege. This case does not present the appropriate occasion to decide whether the deliberative process privilege is incorporated into § 16–4–203(b)(v) of the WPRA. Therefore, we decline to decide that issue. To the extent that the district court held the WPRA incorporates the privilege, we reverse.