# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 83

APRIL TERM, A.D. 2014

June 26, 2014

ROBERT H. ALAND,

Appellant
(Plaintiff),

v.

MATTHEW H. MEAD, Governor of the
State of Wyoming; WYOMING GAME &
FISH DEPARTMENT; and SCOTT
TALBOTT, Director of the Wyoming
Game & Fish Department,

Appellees
(Defendants).

S-13-0119

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
Bruce T. Moats, Law Office of Bruce T. Moats, P.C., Cheyenne, Wyoming.

*Representing Appellees:*
Peter K. Michael, Wyoming Attorney General; Ryan T. Schelhaas, Senior Assistant Attorney General; and Bridget L. Hill, Senior Assistant Attorney General. Argument by Mr. Schelhaas.

*Before KITE, C.J., and HILL, BURKE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    Robert Aland requested documents related to the status of grizzly bears under the Endangered Species Act from the Office of the Governor and the Wyoming Game & Fish Department (collectively the State) pursuant to the Wyoming Public Records Act (WPRA).  The State provided some documents and denied access to others on grounds that the documents were privileged under the deliberative process privilege and the attorney-client privilege.

[¶2]    Mr. Aland filed a petition in district court seeking access to the withheld documents.  The district court concluded that the WPRA incorporates the deliberative process privilege as a ground to exempt documents from disclosure under the Act, and it found that the documents withheld under the deliberative process privilege fit within the scope of the privilege and were properly withheld by the State.  The court further ruled that two of the three documents withheld by the State under the attorney-client privilege were properly withheld.  Mr. Aland appealed to this Court.

[¶3]    We affirm in part and reverse in part.  We affirm the district court's ruling that the WPRA incorporates the deliberative process privilege as a ground to exempt documents from disclosure under the Act, and we affirm the district court's ruling with respect to the documents withheld under the attorney-client privilege.  With respect to the documents withheld pursuant to the deliberative process privilege, we find that some of the documents were properly withheld, but others are outside the scope of the privilege's protection and were thus not properly withheld.

## ISSUES

[¶4]    We restate the issues as follows:

    1.  Does the Wyoming Public Records Act include a deliberative process privilege?

    2.  Do the documents withheld fall within the deliberative process privilege?

    3.  Do the documents withheld fall within the attorney-client privilege?

## FACTS

[¶5]    On May 24, 2012, Governor Matthew H. Mead sent a letter to Secretary of the Interior, Ken Salazar, regarding the continued listing of the grizzly bear on the endangered species list.  By letter dated July 20, 2012, Mr. Aland requested copies of public records related to Governor Mead's letter.  Specifically, Mr. Aland requested:

1

1.  All drafts of the May 24 Letter;

2.  All comments and suggestions with regard to the substance and content of the May 24 Letter provided by officials and employees of the State of Wyoming, federal agencies and third parties;

3.  All communications between or among officials and employees of the State of Wyoming and officials and employees of the USDOI and other federal agencies and the Interagency Grizzly Bear Committee with regard to the May 24 Letter before and after the May 24 Letter was finalized and issued;

4.  All communications between or among officials and employees of the State of Wyoming and non-governmental organizations with regard to the May 24 Letter before and after the May 24 Letter was finalized and issued;

5.  All minutes and notes of meetings, telephone conversations and other contacts relating to the May 24 Letter, including contacts with Secretary Salazar and other officials and employees of the USDOI and other federal agencies and nongovernmental organizations;

6.  All reports, analyses and other documents of every kind and character relied upon by Governor Mead to support factual statements in the May 24 Letter, including, but not limited to, statements relating to Wyoming's $35 Million investment in recovery over the last 28 years, Wyoming's $2 million average annual cost for grizzly bear management, names of USDOI grizzly bear scientists who "believe the species is unquestionably recovered" in the GYA, and investigative reports and other documents relating to four human deaths over the last two years in the GYA;

7.  All reports, analyses and other documents relating to the decisions of the courts in *Greater Yellowstone Coalition v. [Servheen]*, 665 F.3d 1015 (9th Cir. 201[1]), affirming 672 F.Supp.2d 1105 (D. Mont. 2009) (Copies of the courts' opinions should not be provided);

8.  All reports, analyses and other documents relating actions that will or might be taken by, and options that are available

2

to, the State of Wyoming if Secretary Salazar and the USDOI do not act in accordance with the May 24 Letter;

9. All communications and documents relating to, and supporting, the following statement in the first paragraph of the May 24 Letter: "Thank you again for your work on the wolf and sage-grouse"; and

10. All communications and documents relating to prior matters with regard to which Governor Mead and Secretary Salazar have worked together that support the following statement in the last paragraph of the May 24 Letter. "I look forward to working *again* with you and your Department. . . ." (Emphasis added.)

[¶6]    On October 4, 2012, the State provided Mr. Aland documents in response to his request, along with two privilege logs, one devoted to documents held by the Governor's Office and the other devoted to documents held by the Wyoming Game & Fish Department.  The State identified documents or portions thereof that it withheld as privileged and the reasons for withholding or redacting those documents.  The logs specified three reasons for withholding documents: 1) they contain privileged legal advice; 2) they are not available to a party in litigation with the agency as provided by Wyo. Stat. Ann. § 16-4-203(b)(v) (LexisNexis 2013) and disclosure is contrary to the public interest because they are deliberative; or 3) the documents contained personal identifying information.

[¶7]    On November 13, 2012, Mr. Aland filed a petition with the district court seeking access to the documents withheld on grounds of the deliberative process privilege and attorney-client communication privilege.  Before the dispute was submitted to the court, the State provided Mr. Aland with additional documents so that at the time of hearing forty-five documents were in dispute.  Following briefing, oral argument, and an *in camera* review of the disputed documents, the court ruled that all but one of the documents were properly withheld.  The court concluded that the WPRA incorporates the deliberative process privilege into Wyoming law and that all "the documents for which the deliberative process privilege is sought would fall within that privilege."  With regard to the documents withheld under the attorney-client privilege, the court concluded that two of the three documents were properly withheld.[1]  Mr. Aland timely filed his notice of appeal.

---

[1] The State has provided Mr. Aland the document that the district court ruled was not protected by the attorney-client privilege.

3

[¶8]    Whether the WPRA incorporates the deliberative process privilege is a question of statutory interpretation that we review *de novo*. *Powder River Basin Res. Council ("PRBRC") v. Wyo. Oil & Gas Conservation Comm'n*, 2014 WY 37, ¶ 19, 320 P.3d 222, 228 (Wyo. 2014); *Freudenthal v. Cheyenne Newspapers, Inc.*, 2010 WY 80, ¶ 10, 233 P.3d 933, 936 (Wyo. 2010). Application of the WPRA's exemptions from disclosure likewise presents a question of law that we review *de novo*. *Laramie Cnty. Sch. Dist. No. One v. Cheyenne Newspapers, Inc.*, 2011 WY 55, ¶ 2, 250 P.3d 522, 523 (Wyo. 2011); *Freudenthal*, 2010 WY 80, ¶ 10, 233 P.3d at 936.

*DISCUSSION*

[¶9]    In *Freudenthal*, this Court reserved ruling on the question of whether the WPRA incorporates the deliberative process privilege because the documents at issue in that case were not the type that would fall within the privilege. 2010 WY 80, ¶ 32, 233 P.3d at 942. The case now before us does present disputed documents that fit within the scope of the privilege, making resolution of the question proper at this time. We begin our discussion by interpreting Wyo. Stat. Ann. § 16-4-203(b)(v) (LexisNexis 2013), which requires us to decide whether we recognize a common law deliberative process privilege in Wyoming. We then turn to application of that exemption to the disputed documents. Finally, we address the two documents withheld under the attorney-client privilege.

**I.    Does the Wyoming Public Records Act include a deliberative process privilege exception?**

[¶10]  The WPRA provides that records of the state, its agencies, and local government entities "shall be open for inspection by any person at reasonable times." Wyo. Stat. Ann. § 16-4-202(a) (LexisNexis 2013). The Act, however, also authorizes a records custodian to deny access to certain records.

> (b)  The custodian may deny the right of inspection of the following records, unless otherwise provided by law, on the ground that disclosure to the applicant would be contrary to the public interest:
>
>     . . . .
>
>     (v)  Interagency or intraagency memoranda or letters which would not be available by law to a private party in litigation with the agency[.]

Wyo. Stat. Ann. § 16-4-203(b)(v).

[¶11]  The task before this Court is to determine whether Section 203(b)(v) of the WPRA incorporates the deliberative process privilege, a question of statutory interpretation.

> In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed *in pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony.  Statutory construction is a question of law, so our standard of review is *de novo*.  We endeavor to interpret statutes in accordance with the legislature's intent.  We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.  We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia*.  When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. *Wyoming Board of Outfitters and Professional Guides v. Clark*, 2001 WY 78, ¶ 12, 30 P.3d 36, [41] (Wyo. 2001); *Murphy v. State Canvassing Board*, 12 P.3d 677, 679 (Wyo. 2000). Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation. *Billis v. State*, 800 P.2d 401, 413 (Wyo. 1990) (citing *McGuire v. McGuire*, 608 P.2d 1278, 1283 (Wyo. 1980)).

*PRBRC*, 2014 WY 37, ¶ 19, 320 P.3d at 228 (quoting *Mountain Cement Co. v. South of Laramie Water & Sewer Dist.*, 2011 WY 81, ¶ 13, 255 P.3d 881, 885-86 (Wyo. 2011)).

[¶12] In considering the meaning the legislature intended for the WPRA's section 203(b)(v) exemption from disclosure, we are guided by the Act's purpose of maintaining an open and accountable government. *Freudenthal*, 2010 WY 80, ¶ 19, 233 P.3d at 938. We have observed:

> The WPRA, like the FOIA [Freedom of Information Act], requires that disclosure generally prevail over secrecy. *Sheridan Newspapers*[*, Inc. v. City of Sheridan*], 660 P.2d [785,] 793 [(Wyo. 1983)] (assigning the same legislative intent to the WPRA as is found characteristic of the FOIA). "Implementation of that goal is provided by affording a

5

liberal interpretation to the WPRA and construing its exceptions narrowly." *Allsop* [*v. Cheyenne Newspapers, Inc.*, 2002 WY 22], ¶ 10, 39 P.3d [1092,] 1095 [(Wyo. 2001)] (footnote omitted); *see also Laramie Cnty. Sch. Dist. No. One v. Cheyenne Newspapers, Inc.*, 2011 WY 55, 250 P.3d 522, 525 (Wyo. 2011); *Houghton v. Franscell*, 870 P.2d 1050, 1052 (Wyo. 1994); *Sheridan Newspapers*, 660 P.2d at 793.

*PRBRC*, 2014 WY 37, ¶ 33, 320 P.3d at 231.

[¶13] Consistent with the WPRA's purpose to maintain a transparent and accountable government and an informed electorate, the exceptions for production are construed narrowly, *Allsop v. Cheyenne Newspapers, Inc.*, 2002 WY 22, ¶ 10, 39 P.3d 1092, 1095 (Wyo. 2002); *Laramie River Conservation Council v. Dinger*, 567 P.2d 731, 732 (Wyo. 1977), and there is an inherent presumption that "the denial of inspection is contrary to public policy." *PRBRC*, 2014 WY 37, ¶¶ 32-34, 320 P.3d at 231; *Sheridan Newspapers, Inc. v. City of Sheridan*, 660 P.2d 785, 796 (Wyo. 1983).

[¶14] As is apparent from the Act's exemption provisions, however, the legislature also recognized that the disclosure of certain documents could be contrary to the public interest. *See* Wyo. Stat. Ann. § 16-4-203(b) (specifying records to which custodian may deny right of access where disclosure would be contrary to public interest); Wyo. Stat. Ann. § 16-4-203(d) (LexisNexis 2013) (specifying records to which custodian shall deny access); *PRBRC*, 2014 WY 37, ¶ 35, 320 P.3d at 231 (noting that WPRA strikes "a delicate balance between the public's right of access to government records and the protection of proprietary information").

[¶15] In *Freudenthal*, although we declined to answer the question whether the WPRA incorporates the deliberative process privilege, we provided a thorough discussion of the approach to reaching that answer. We recognized that deciding whether there is a common law deliberative process privilege in Wyoming requires an examination of "Wyoming statutory law and legislative intent, this Court's previous pronouncements concerning the WPRA, the common law, federal law interpreting [the Freedom of Information Act (FOIA)] and the degree to which the latter sources should influence our interpretation of state law." *Freudenthal*, 2010 WY 80, ¶ 31, 233 P.3d at 942.

## A. Deliberative process privilege in litigation

[¶16] The threshold question this Court must answer is whether we recognize the deliberative process privilege at common law. If this privilege exists under the common law of Wyoming, it is incorporated in the WPRA. This approach is consistent with other authorities. *See, e.g.*, *Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, 121 S.Ct. 1060, 1065, 149 L.Ed.2d 87 (2001)

6

(discussing requirements for application of FOIA Exemption 5, "it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it"), 2 *Federal Evidence* § 5:57, at 893 (Christopher B. Mueller & Laird C. Kirkpatrick, 4th ed. 2013) (discussing FOIA Exemption 5 and stating "in effect this language incorporates the common law definition of the deliberative process privilege"); 1 *McCormick on Evidence* § 108, at 653 (Kenneth S. Broun ed., 7th ed. 2013) ("FOIA itself does not address the question of evidentiary admissibility, and thus it cannot be said to be a statutory enactment of the privilege in question.").

[¶17] We now follow the analysis mapped out for us in *Freudenthal*, and turn to the rules and law governing litigation to determine whether there is a deliberative process privilege available under Wyoming law. No Wyoming rule or statute provides for an applicable evidentiary privilege and this Court has not, to date, recognized a common law deliberative process privilege.[2] *See Freudenthal*, 2010 WY 80, ¶¶ 25, 28, 233 P.3d at 940, 941.

---

[2] Wyoming has recognized certain privileges by statute, but makes no reference to the deliberative process privilege.

**Privileged communications and acts.**

    (a)    The following persons shall not testify in certain respects:

        (i)    An attorney or a physician concerning a communication made to him by his client or patient in that relation, or his advice to his client or patient. The attorney or physician may testify by express consent of the client or patient, and if the client or patient voluntarily testifies the attorney or physician may be compelled to testify on the same subject;

        (ii)    A clergyman or priest concerning a confession made to him in his professional character if enjoined by the church to which he belongs;

        (iii)  Husband or wife, except as provided in W.S. 1-12-104;

        (iv)  A person who assigns his claim or interest concerning any matter in respect to which he would not be permitted to testify if a party;

        (v)    A person who, if a party, would be restricted in his evidence under W.S. 1-12-102 shall, where the property is sold or transferred by an executor, administrator, guardian, trustee, heir, devisee or legatee, be restricted in the same manner in any action or proceeding concerning the property;

        (vi) A confidential intermediary, as defined in W.S. 1-22-201(a)(viii), concerning communications made to him or information obtained by him during the course of an investigation pursuant to W.S. 1-

7

[¶18]  Rule 501 of the Wyoming Rules of Evidence reads:

> Except as otherwise required by the constitution or statute or by these or other rules promulgated by the Supreme Court of Wyoming, the privilege of a witness, person, government, state, or political subdivision thereof shall be governed by the **principles of the common law** as they may be interpreted by the courts of the State of Wyoming in the light of reason and experience.

W.R.E. 501.  (Emphasis added.)

[¶19]  Although the deliberative process "privilege is most commonly encountered in [FOIA] litigation, it originated as a common law privilege." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (citations omitted).  As we stated in *Freudenthal*, we "recognize the common law as modified by judicial decisions, accepting the interpretation that best fits the time and this jurisdiction." 2010 WY 80, ¶ 27, 233 P.3d at 941 (citing *Nulle v. Gillette-Campbell Cnty. Joint Powers Fire Bd.*, 797 P.2d 1171, 1172 (Wyo. 1990)).  This Court will not, however, routinely accept common law that has been adopted in other jurisdictions in a vacuum.  Rather, we evaluate any particular common law rule independently to determine whether it is consistent with our policies and precedent before adopting it.  *Id*.  With this guidance in mind, we turn to whether the common law privilege exists in Wyoming.

[¶20]  The deliberative process privilege exempts from disclosure communications between executive officials that are both pre-decisional and deliberative. *Freudenthal*, 2010 WY 80, ¶ 33, 233 P.3d at 942.  The policy objective proffered for the privilege is protection of the governmental decision-making process:

> Among the reasons given for recognizing the privilege in the context of FOIA's Exemption 5 are that the privilege protects the flow of ideas within government agencies, allows candid discussion and free exploration of ideas and improves governmental decision-making by taking official deliberations out of a fishbowl. *Id.*; *Sun-Sentinel Co. v. U.S. Dep't of Homeland Sec.*, 431 F.Supp.2d 1258, 1277 (S.D. Fla. 2006). The United States Supreme Court reiterated the rationale for the privilege within the context of FOIA's

22-203, when the public interests, in the judgment of the court, would suffer by the disclosure.

Wyo. Stat. Ann. § 1-12-101 (LexisNexis 2013).

8

Exemption 5 most recently in *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9, 121 S.Ct. 1060, 1066, 149 L.Ed.2d 87 (2001):

> The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance "the quality of agency decisions" by protecting open and frank discussion among those who make them within the Government.

*Id*. at ¶ 16, at 937-38.

[¶21] Another court has framed the policy underlying the deliberative process privilege as follows:

> The privilege has a number of purposes: it serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action. See *Jordan* [*v. United States Dep't of Justice*, 591 F2d 753, 772-74, 192 U.S.App.D.C. [144], 163-165 [(1978)].

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

[¶22] We are not persuaded by Mr. Aland's argument that we should reject the privilege because the policy reasons behind it are not supported by empirical evidence. No empirical data is necessary where, as here, the conclusion that decisionmakers will be less inhibited in expressing their opinions if they have some assurance they will not later be subject to public ridicule and criticism, is based on a strong body of case law and "simple common sense." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555, 121 S.Ct. 2404, 2421, 150 L.Ed.2d 532 (2001). We find the policy purposes behind the common law deliberative process privilege to be persuasive, and consistent with Wyoming policies and precedent; we therefore hold that a common law deliberative process privilege exists in Wyoming.

9

[¶23] Although we recognize a deliberative process privilege at common law, our decision does not address application of the privilege in the context of litigation with a government agency; rather, we confine our analysis to the context of applying the privilege to public records cases. We qualify our decision because we are mindful that the deliberative process privilege may be analyzed differently depending on the circumstances presented in litigation. As the U.S. Supreme Court has explained:

> Moreover, at best, the discovery rules can only be applied under Exemption 5 by way of rough analogies. For example, we do not know whether the Government is to be treated as though it were a prosecutor, a civil plaintiff, or a defendant. Nor does the Act, by its terms, permit inquiry into particularized needs of the individual seeking the information, although such an inquiry would ordinarily be made of a private litigant. Still, the legislative history of Exemption 5 demonstrates that Congress intended to incorporate generally the recognized rule that 'confidential intra-agency advisory opinions . . . are privileged from inspection.' *Kaiser Aluminum & Chemical Corp. v. United States*, 157 F.Supp. 939, 946, 141 Ct.Cl. 38, 49 (1958).

*EPA v. Mink*, 410 U.S. 73, 86-87, 93 S.Ct. 827, 835-36, 35 L.Ed.2d 119 (1973) (footnote omitted).

[¶24] The District of Columbia Circuit Court of Appeals elaborated further on this distinction between application of the deliberative process privilege in the public records context and in litigation with a government agency.

> The language of Exemption 5 is cast in terms of discovery law; the agencies need turn over no documents "which would not be available by law to a private party in litigation with the agency." This discovery standard can only serve as a "rough guide" to the courts, *EPA v. Mink*, 410 U.S. 73, 86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119 (1973), since decisions as to discovery are usually based on a balancing of the relative need of the parties, and standards vary according to the kind of litigation involved. Furthermore, the most fundamental discovery and evidentiary principle, relevance to the issues being litigated, plays no part in FOIA cases. It is clear, however, that Congress intended that agencies should not lose the protection traditionally afforded through the evidentiary privileges simply because of the passage of the FOIA. The courts have recognized that Exemption 5 protects,

10

> as a general rule, materials which would be protected under the attorney-client privilege, *Mead Data Central* [*v. United States Dep't of the Air Force*, 184 U.S.App.D.C. [350], 360-363, 566 F.2d [242], 252-255 [(1977)]; the attorney work-product privilege, *NLRB v. Sears*, 421 U.S. [132], 154, 95 S.Ct. [1504], 1518 [(1975)], *Bristol-Myers Co. v. FTC*, 194 U.S.App.D.C. 99, 598 F.2d 18 (1978); or the executive "deliberative process" privilege, *EPA v. Mink*, 410 U.S. at 85-90, 93 S.Ct. at 835-837, *Vaughn v. Rosen*, 173 U.S.App.D.C. 187, 523 F.2d 1136 (1975) (Vaughn II).

*Coastal States*, 617 F.2d at 862; *see also Dinger*, 567 P.2d at 733 ("A showing of need is unnecessary to obtain access to public records . . . .").

[¶25]  This Court has long recognized "the primary interest of the bar and bench is the disclosure of true facts in a given litigation." *Barber v. State Highway Comm'n*, 80 Wyo. 340, 354-55, 342 P.2d 723, 727 (Wyo. 1959).  A challenge to the assertion of the deliberative process privilege in litigation would be viewed under our liberal discovery rules.  As the Indiana Supreme Court has cautioned, evidentiary privileges, even when supported by sound public policy, "are not lightly created nor expansively construed [because] they are in derogation of the search for truth." *In re C.P.*, 563 N.E.2d 1275, 1277 (Ind. 1990) (quoting *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974)).

> As can be seen by the text of the discovery rules, in the early stages of litigation the parties are permitted broad access to information held by the other side.  This broad access exists even though compliance with discovery requests often creates considerable burdens on the responding party.  The policy for this liberal attitude is the belief that both parties must be permitted to scrutinize all relevant evidence so that each will have a fair opportunity to present its case at trial, and the flexible provisions contained in the rules serve this end.

*In re Estate of Novakovich*, 2004 WY 158, ¶ 25, 101 P.3d 931, 937 (Wyo. 2004). (Application of the privilege in litigation could further be adjusted in light of the availability of protective orders under W.R.C.P. 26(c), which are not available in the context of WPRA record requests.)

[¶26] A decision on the precise application of the deliberative process privilege to litigation must await the proper case.  We observed in *Freudenthal* that it would not be appropriate in that case to attempt to define the parameters of an evidentiary privilege, explaining that "it is axiomatic that in applying any evidentiary privilege, a court must

11

consider the nature of the particular documents in the context of the litigation and assure the protection provided is as limited as it can be." 2010 WY 80, ¶ 31, 233 P.3d at 942. The same is true in the present case. We are not presented with the question of the privilege in the context of a discovery request during litigation with a government entity, and we therefore do not address the parameters of an evidentiary privilege or define how the privilege should apply in the litigation context.

[¶27] We do, however, conclude that a common law deliberative process privilege does exist in Wyoming, and we now turn to its function in section 203(b)(v) of the WPRA.

## B. The deliberative process privilege in the WPRA

[¶28] We look to federal precedent and other state precedent[3] to guide us on the application of the deliberative process privilege available in Wyoming. In *PRBRC*, we found federal

[3] States are split on recognizing a deliberative process privilege. The New Mexico Supreme Court recently rejected the privilege in *Republican Party of New Mexico v. New Mexico Taxation & Revenue Dep't*, 283 P.3d 853, 860, 863-64 (N.M. 2012) (interpreting a public records act provision that allows disclosure to be limited "as otherwise provided by law," and noting that "FOIA and [New Mexico's public records act] are not identical" and "FOIA jurisprudence is of limited persuasion . . . ."). *See also Rigel Corp. v. State*, 234 P.3d 633, 640-41 (Ariz. Ct. App. 2010) (intermediate appellate court holds the privilege does not apply in tax litigation context, not interpreting its public records law); *People ex rel. Birkett v. City of Chicago*, 705 N.E.2d 48, 53 (Ill. 1998) (addressing the privilege in context of litigation, deferring to the legislature to establish the privilege); *News & Observer Publ'g Co. v. Poole*, 412 S.E.2d 7, 20 (N.C. 1992) (interpreting a statute that does not contain the inter- and intra-agency communication exception, and holding "[w]e refuse to engraft upon our Public Records Act exceptions based on common-law privileges, such as a 'deliberative process privilege,' to protect items otherwise subject to disclosure."); *Sands v. Whitnall Sch. Dist.*, 754 N.W.2d 439, 458 (Wis. 2008) (Wisconsin statute prohibits the extension of common law privileges by the court on a case-by-case basis, "but rather requires common law privileges not originating in the constitution to be adopted by statute or court rule."); *Babets v. Sec'y of the Exec. Office of Human Servs.*, 526 N.E.2d 1261, 1264 (Mass. 1988) (holding that neither constitutional nor common law executive privilege could be invoked to shield documents from production in a civil action).

Other states do recognize the privilege, adopting the rationale of the federal courts interpreting FOIA. *See, e.g., Gwich'in Steering Comm. v. Office of the Governor*, 10 P.3d 572, 578-79 (Alaska 2000) (finding common law deliberative process privilege and applying it under public records act exception for "records required to be kept confidential by . . . state law"); *City of Colorado Springs v. White*, 967 P.2d 1042, 1049-50 (Colo. 1998) (recognizing deliberative process privilege based on common law principles); *DR Partners v. Bd. of Cnty. Comm'rs of Clark Cnty.*, 6 P.3d 465, 469-70 (Nev. 2000) (recognizing a deliberative process privilege under FOIA Exemption 5 rationale, but finding it inapplicable to documents at issue); *In re Liquidation of Integrity Ins. Co.*, 754 A.2d 1177, 1182 (N.J. 2000) (adopting FOIA rationale); *Commonwealth v. Vartan*, 733 A.2d 1258, 1263-64 (Pa. 1999) (applying deliberative process privilege to judiciary); *Herald Ass'n, Inc. v. Dean*, 816 A.2d 469, 474-75 (Vt. 2002) (recognizing deliberative process privilege under exception to Vermont public records statute that "would cause the custodian to violate any statutory or common law privilege"); *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 360 (Tex. 2000) (citing Tex. Gov't Code Ann. § 552.111 (West 1993)); *Stromberg Metal Works, Inc. v. Univ. of Maryland*, 854 A.2d 1220, 1227 (Md. 2004).

precedent particularly helpful in interpreting a WPRA exemption that had a close FOIA counterpart, because "the philosophy behind the FOIA is consistent with that which led to the adoption of the WPRA. . . ." 2014 WY 37, ¶ 37, 320 P.3d at 232.

[¶29]   Our reliance on the similarities between the FOIA and the WPRA in interpreting our law finds support not only in this Court's historical approach, but also in the analysis of other states that have approached the question in a similar manner.  For example, the Texas Supreme Court, in construing that state's public disclosure exemptions that likewise mirror the FOIA intra/interagency communication exemption, reasoned:

> As already noted, the Legislature modeled the Act on the FOIA.  *See Holmes* [*v. Morales*], 924 S.W.2d [920,] 925 [(Tex. 1996)]; *A & T Consultants* [*v. Sharp*], 904 S.W.2d [668,] 676 [(Tex. 1995)]; [*Texas Dep't of Public Safety v.*] *Gilbreath*, 842 S.W.2d [408,] 412 [(Tex.App. 1992)].  Indeed, section 552.111's language is almost identical to the FOIA's agency memoranda exception.  *See* 5 U.S.C. § 552(b)(5) (exempting "inter-agency or intra-agency memorandum or letters which would not be available by law to a party other than an agency in litigation with the agency"). . . . .  When the Legislature adopts a federal statute, we presume that it knew of the federal court's construction of the federal statute when it adopted the statute and intended to adopt that construction. *See Blackmon v. Hansen*, 140 Tex. 536, 169 S.W.2d 962, 964-65 (1943).  Therefore, we hold that section 552.111 of the Act incorporates the deliberative process privilege.

*City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 360 (Tex. 2000) (footnote omitted); *see also Stromberg Metal Works, Inc. v. Univ. of Maryland*, 854 A.2d 1220, 1227-28 (Md. 2004) (relying on similarity between state exemption and FOIA exemption to find deliberative process privilege).

[¶30]   As we observed in *Freudenthal*, federal precedent is clear in finding that language exempting intra/interagency communications from disclosure serves to incorporate the deliberative process privilege.  2010 WY 80, ¶ 13, 233 P.3d at 937 (citing *Mink*, 410 U.S. at 87, 93 S.Ct. at 836) ("After Congress enacted the 1966 Freedom of Information Act, 5 U.S.C. § 552, the federal courts generally construed it as incorporating the deliberative process privilege by way of § 552(b)(5)[.]"); *see also City of Garland*, 22 S.W.3d at 360 ("Federal courts have consistently held that the FOIA's agency memorandum exception includes the deliberative process privilege[.]").

[¶31] Mr. Aland argues that the Wyoming legislature's failure to amend the WPRA to expressly incorporate a deliberative process privilege is a clear indication of legislative intent to reject such a privilege.

[¶32] In 2012, in the course of considering amendments to the WPRA, the Wyoming senate sought to add the following underlined language to Wyo. Stat. Ann. § 16-4-203(b):

> (v) Interagency or intraagency memoranda or letters which would not be available by law to a private party in litigation with the agency or records of pre-decisional and deliberative communications of the agency officials or employees which are integral parts of the decision-making process, including suggestions, advisory opinions, recommendations, projections, proposals and deliberations.

2012 Wyo. Senate Journal, at 85. The underlined language was omitted, however, on third reading, and section 203(b)(v) was left unchanged. *Id*. Without legislative history, we can only speculate about whether the legislature believed the existing language already incorporated the privilege, or whether it intended to expressly exclude the privilege.[4] We will therefore confine our analysis to the existing statutory language.

[¶33] We likewise find little direction from the 1995 amendment of the Public Meetings Act, which expanded the definition of a public meeting to mean "an assembly of at least a quorum of the governing body of an agency which has been called by proper authority of the agency for the expressed purpose of discussion, deliberation, presentation of information or taking action regarding public business." Wyo. Stat. Ann. § 16-4-402(a)(iii) (LexisNexis 2013). We are not persuaded there is any basis to extend the intent reflected in the Public Meetings Act amendment to the Public Records Act's exemption of intra/interagency communications.

[¶34] Mr. Aland further argues that this Court previously rejected the deliberative process privilege in *Dinger*, where we said:

> We are not moved by the argument that some members of the commission of the agency might be embarrassed and what is said used for adverse publicity and, therefore, do injury to the public interest. We must remind that persons in

---

[4] At the October 13 & 14, 2011, Joint Judiciary Committee meeting, it appears there was some discussion of what deleting this same language from a previous version of the bill amending the Act would mean. "The Committee discussed that an amendment to delete the new deliberative process privilege language should not be seen as an indication of whether there currently is or is not a deliberative process privilege. Nor should it signal a change to the Supreme Court's current interpretation of the privilege. Deleting the language merely allows the issues to be discussed at a later time." Wyoming Joint Judiciary Committee Summary of Proceedings of October 13 &14, 2011, Meeting, p. 4, available at http://legisweb.state.wy.us/InterimCommittee/2011/01Min1013.pdf.

14

possession of powers of government in our form of democracy must accept that possible fate. There is a well-known expression applied to those in public office, "If you can't stand the heat, you'd better stay out of the kitchen." Confrontation has a salutary effect and causes those in positions of public responsibility to practice thoughtfulness and wisdom in their utterances and carefully weigh their decisions.

567 P.2d at 734.

[¶35] In *Dinger*, the document at issue was the transcript of a meeting that had been open to the public. 567 P.2d at 734. The Court rejected the agency director's "attempts by a process of metamorphosis to change the transcript into an exempt interagency memorandum by claiming he directed the tape recording to be made" so that staff could gain insight into the council's thought processes. *Id.* at 733. The Court in *Dinger* considered the section (b)(v)[5] exception now before us, and it did not reject the privilege. Rather, in *Dinger* we recognized that, "**[w]ith some necessary exceptions**, recognized by Wyoming's records and meetings acts, state agencies must act in a fishbowl." *Id.* at 734 (emphasis added). We held in *Dinger*, as we did in *Freudenthal*, only that the documents at issue did not fall within the exception. *Id*.

[¶36] Mr. Aland contends that federal precedent should be rejected because the WPRA places a much greater emphasis on the public interest served by an open government than does the FOIA. We are unable to agree with this assessment. Indeed, this Court has repeatedly commented that the WPRA and the FOIA share a common interest in openness. *See PRBRC*, 2014 WY 37, ¶ 37, 320 P.3d at 232 ("[T]he philosophy behind the FOIA is consistent with that which led to the adoption of the WPRA[.]"); *Freudenthal*, 2010 WY 80, ¶ 18, 233 P.3d at 938 ("[T]he policy behind the WPRA, like that behind FOIA, is one of disclosure, not secrecy, meaning the exemptions are to be narrowly construed[.]"); *Sublette Cnty. Rural Health Care Dist. v. Miley*, 942 P.2d 1101, 1103 (Wyo. 1997) ("We previously have determined that the Wyoming Public Records Act and the Federal Freedom of Information Act (FOIA), 5 U.S.C. § 552, have a common objective, which is that disclosure, not secrecy, should prevail."); *Dinger*, 567 P.2d at 733 ("The policy and dominant object of the Freedom of Information Act is on disclosure, not secrecy. Exemptions, therefore, are to be construed narrowly. . . . We hold that analysis to be applicable to Wyoming's Public Records Act.").

[¶37] The WPRA does contain public interest language that is not found in its FOIA counterpart. In particular, the WPRA authorizes a records custodian to deny access to

---

[5] Wyo. Stat. § 9-692.3(b)(v)(Michie 1975 Cum. Supp.), the predecessor to Wyo. Stat. Ann. § 16-4-203(b)(v).

intra/interagency communications where disclosure "would be contrary to the public interest." Wyo. Stat. Ann. § 16-4-203(b). We agree this language does impose an additional public interest consideration upon the Wyoming records custodian, as discussed more thoroughly below. *See infra* ¶¶ 45-47. However, we are not persuaded that this language is a basis for rejecting federal law interpreting the parallel FOIA provision.

[¶38] We hold that the deliberative process privilege is incorporated into section 203(b)(v) of the WPRA. In recognizing the deliberative process privilege in the context of the WPRA, we note that it is a very narrowly-circumscribed privilege that can be invoked only with due care. The burden remains upon the custodian of the records to overcome the WPRA's presumption in favor of disclosure as to each document withheld (or redacted, *see Allsop*, 2002 WY 22, ¶ 30, 39 P.3d at 1101). The custodian must be prepared to provide a written statement of grounds for denial upon request of the applicant, with sufficient information to allow the applicant to evaluate the basis for denial. Wyo. Stat. Ann. § 16-4-203(e) (LexisNexis 2013); *see PRBRC*, 2014 WY 37, ¶¶ 21-24, 320 P. 3d at 229-30; *Reno Newspapers, Inc. v. Gibbons*, 266 P.3d 623, 629 (Nev. 2011) (holding that "a claim that records are confidential can only be tested in a fair and adversarial manner, and in order to truly proceed in such a fashion, a log typically must be provided to the requesting party").

[¶39] In making the decision to assert the deliberative process privilege in response to a public records request, the custodian must insure that the decision to withhold the records does indeed satisfy all prongs of the test: 1) it is an interagency or intraagency communication, 2) the communication is pre-decisional and deliberative, and 3) disclosure is not in the public interest.

### 1. Interagency or intraagency communication

[¶40] The first requirement is that the communication be between employees or officials within an agency or between agencies of the State, such as the communications at issue here between members of the Wyoming Game & Fish Commission and the Governor's office.

### 2. Communication is pre-decisional and deliberative

[¶41] Second, for a document to be "pre-decisional," the document must be one that is generated prior to the government's adoption of a policy. "The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents . . . which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." *Coastal States Gas Corp.*, 617 F.2d at 866.

[¶42] The *Coastal States Gas Corp.* court went on to say:

> To test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency . . . . We also ask whether the document is recommendatory in nature or is a draft of what will become a final document, and whether the document is deliberative in nature, weighing the pros and cons of agency adoption of one viewpoint or another. Finally, even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public.

617 F.2d at 866.

[¶43] To demonstrate that a document is "deliberative" in nature, the government must show that the document reflects the give and take of the government's decision-making process. Such documents will contain "advisory opinions, deliberations or the exercise of discretion on some policy." *Freudenthal*, 2010 WY 80, ¶ 35, 233 P.3d at 943. Mere factual information will not generally be considered sufficient to satisfy the deliberative nature requirement.

[¶44] In *Freudenthal*, we cited with favor the Tenth Circuit's conclusion that "[i]nformation is not protected simply because disclosure would reveal some minor or obvious detail of an agency's decision making process." 2010 WY 80, ¶ 36, 233 P.3d at 943 (citing *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1228 (10th Cir. 2007)). We further explained that a document is privileged only "if its disclosure would 'lay bare the discussion and methods of reasoning of public officials' and withholding it is necessary to 'protect free discussion of prospective operations and policy.'" *Freudenthal*, 2010 WY 80, ¶ 34, 233 P.3d at 943 (citing *Kaiser Aluminum & Chemical Corp. v. United States*, 157 F.Supp. 939, 947, 141 Ct.Cl. 38, 49 (1958)).

### 3.   Disclosure would be contrary to the public interest

[¶45] The final requirement for protection under Wyoming's deliberative process privilege is that the document's disclosure "would be contrary to public interest." Wyo. Stat. Ann. § 16-4-203(b). Once the custodian has determined that the deliberative process privilege applies under Section (b)(v), he must then make the further determination which requires weighing of the interests of the government in not disclosing the document against the public's interest in maintaining a transparent and

17

accountable government and an informed electorate. The burden of proof is on the custodian to overcome our inherent presumption that "the denial of inspection is contrary to public policy," *Freudenthal*, 2010 WY 80, ¶ 19, 233 P.3d at 938, and the custodian "must . . . test any contemplated withholding decision by asking whether withdrawal will be in the public interest." *Sheridan Newspapers*, 660 P.2d at 798.

> Consistent with the WPRA's overarching purpose, "the custodian, in any exercise of his right to withdraw, must confine his withdrawal discretion to those areas and circumstances prescribed by this Act," employing such discretion on a selective basis rather than through the withdrawal of entire categories of public records. *Allsop*, ¶ 10, 39 P.3d at 1095 (quoting *Sheridan Newspapers*, 660 P.2d at 795-96). Put another way, the WPRA creates a presumption that the denial of inspection is contrary to public policy, and therefore places "the burden of proof upon the custodian to show that the exercise of his discretion does not run afoul of statutory limitations in any particular instance where custodial withdrawal is effected." *Sheridan Newspapers, Inc.*, 660 P.2d at 795-96.

*PRBRC*, 2014 WY 37, ¶ 34, 320 P.3d at 231.

[¶46] This public interest element will not necessarily be satisfied by recognition of the public interest that underlies the deliberative process privilege, although it often will be. As the Maryland court has recognized in interpreting similar language:

> In cases in which the custodian invokes the agency memoranda exemption, and in which the trial court has determined that one of the privileges embraced within that exemption applies, the third element . . . will typically be satisfied, namely, disclosure to the applicant would be contrary to the public interest. There is a public interest which underlies each legally recognized privilege and, if the privilege applies, it would be at best difficult to say that an agency decision to withhold was contrary to the public interest.

*Cranford v. Montgomery*, 481 A.2d 221, 229 (Md. 1984).

[¶47] In some instances, this public interest prong of the test is satisfied by weighing the public interest in allowing the free exchange of opinions within the executive branch against the public interest in being informed of the actions of public officials carrying out

the business of the public. However, that may not be the result in every case, and the records custodian as well as the trial courts must carefully weigh the competing public interests, even after concluding the documents fall under the deliberative process privilege.

## II.  *Do the documents withheld fall within the deliberative process privilege?*

[¶48]  Using the framework outlined above, *see supra* ¶¶ 40-47, we turn to application of the deliberative process privilege to the documents at issue in this case.

[¶49]  Many of the documents at issue are draft letters. Draft letters can be protected by the privilege if they are both pre-decisional and deliberative. *See Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993) (holding privilege applied to draft letters proposing two options for responding to public inquiry where neither option was ultimately used and drafts contained advisory opinions important in the deliberative process). As with the other documents, we must determine whether the documents are interagency or intraagency documents, whether they reflect personal opinions and recommendations on how to exercise discretion on a policy matter, whether they reflect the consultative process on a policy matter, and whether their disclosure may tend to prematurely disclose state policy or in some manner confuse the State's position on a policy matter, whether their disclosure would be contrary to public policy. *See Freudenthal*, 2010 WY 80, ¶ 34, 233 P.3d at 942-43; *Grand Central P'shp, Inc. v. Cuomo*, 166 F.3d 473, 481 (2d Cir. 1999); *Coastal States*, 617 F.2d at 866.

[¶50]  We are mindful of Mr. Aland's argument that the State's policy on grizzly bear listing or delisting is already established. While in a broad sense that observation may be accurate, our review of the documents reveals that the State continues to formulate its approach in negotiating with the federal government and interacting with other states on wildlife policy issues. Where the withheld documents reflect this type of deliberation, and we find that the deliberation fits within the framework set forth above, *see supra* ¶¶ 40-47, we have upheld application of the privilege. On the other hand, where a document does no more than communicate or explain set policy on a matter, or is virtually identical in substance to a final and released document, we will necessarily find that the privilege does not apply. *See In re Sealed Case*, 121 F.3d at 737 ("[D]eliberative process privilege does not shield documents that simply state or explain a decision the government has already made[.]"); *Coastal States*, 617 F.2d at 866 (pre-decisional document can lose that status if it becomes agency position on issue or is used in agency dealings).

[¶51] The documents for which the State asserted the deliberative process privilege are Document Nos. 2 through 7, Document No. 9, and Documents No. 11 through 45.[6] To explain its withholding of these documents, the State submitted, and the record contains, affidavits explaining the nature of the document and in most cases its role in the decision-making process, a privilege log setting forth the privilege claimed, and for the draft documents, a copy of the final version of the document that was made public and provided to Mr. Aland. In determining whether draft documents fit within the parameters of the deliberative process privilege, the comparison we have made is between each draft and the final released version of the draft document. We turn then to our consideration of the documents and whether the privilege protects them from disclosure.

## Document No. 2

[¶52] Document No. 2 contains the handwritten notes of Steve Ferrell, the Governor's Wildlife and Endangered Species Policy Advisor, concerning a conversation he had with Scott Talbott, Director of the Wyoming Game & Fish Department. The notes reflect Director Talbott's personal opinions and recommendations, as communicated to Mr. Ferrell, concerning options available to the State with regard to the listing of grizzly bears on the endangered species list. The document reflects the give and take of a conversation regarding a policy matter and does not reflect the State's final decision regarding the issue. Disclosure of this document would be contrary to public policy because it would prematurely disclose options considered by the State in formulating its policy. We find the document fits within the privilege.

## Document No. 3

[¶53] Document No. 3 contains the handwritten notes of Steve Ferrell made in preparation for meetings with the Governor, and the notes reflect Mr. Ferrell's personal thoughts, opinions, and recommendations concerning various wildlife policy matters. Because the note reflects a staff member's personal opinions and thoughts on a policy matter and not the State's final decision regarding the policy, disclosure would be contrary to public policy and we find that the document fits within the privilege.

## Document No. 4

[¶54] Document No. 4 contains the typewritten notes of Steve Ferrell outlining his personal thoughts and suggestions on matters to be included in a letter to Secretary Salazar regarding grizzly bear issues. The document is pre-decisional and reflects Mr. Ferrell's personal thoughts and opinions, rather than the State's position. Initially, this

---

[6] Document Nos. 1 and 8 were withheld on the basis of the attorney-client privilege, which will be discussed hereinafter, and the State provided Aland with a copy of Document 10 after the district court ruled that the document was not protected by the attorney-client privilege.

document fit within the privilege. However, "even if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States*, 617 F.2d at 866. All of the details contained in Document No. 4 became incorporated in the final letter sent to Mr. Salazar on May 24, 2012. As a result, the deliberative nature of the document no longer exists. Further, disclosure of this document would not be contrary to public policy. There is no risk that the disclosure would confuse the public as to the government's position on the issues, nor is there a risk of prematurely disclosing the thoughts, opinions, or deliberations that ultimately were rejected by the Governor's office. The Supreme Court recognized in *National Labor Relations Board v. Sears, Roebuck & Company* that an agency employee is not likely to be chilled by the fear that his advice will become public if that advice is adopted and, therefore, becomes public. 421 U.S. 132, 161, 95 S.Ct. 1504, 1521 (1975). *See also United States v. Philip Morris USA, Inc.*, 218 F.R.D. 312, 317 (D.D.C. 2003) (government "has the burden of establishing that a purportedly privileged document has not been adopted formally or informally"). As a result, we find that this document does not satisfy all three prongs of the privilege and must be disclosed.

## Document Nos. 5 and 6

[¶55] Document Nos. 5 and 6 are draft agendas for a July 7, 2011 meeting between Governor Mead and Secretary Salazar regarding wolf management. The State, through the affidavit of Steve Ferrell, has suggested that the document is privileged because the drafts contain Mr. Ferrell's thoughts on topics that should be discussed and not all of the topics appeared on the final agenda. We do not agree that these two documents are privileged.

[¶56] The final agenda was a list of topics, set forth as follows:

1. Introductions
2. Statements of desired outcomes and timelines
   a. Secretary Salazar
   b. Governor Mead
3. Progress review of ongoing negotiations
   a. Points of agreement
   b. Points requiring agreement
4. Next steps and timeline

[¶57] The draft agenda contained all of the topics listed in the final agenda, along with the following topics that were deleted from the final agenda:

4. Wyoming's position on points of disagreement
5. USFWS's position on points of disagreement

21

6. Discussion on points of disagreement
7. New points of agreement

[¶58] Although the draft agendas are pre-decisional, we are unable to conclude that the agendas are deliberative, given that there is very little substantive difference between the draft agendas and the final agenda. The draft agendas do not detail the State's position on any of the points of agreement or disagreement, and the final agenda communicated that there were points of agreement and disagreement, so the draft topics would not disclose a previously undisclosed detail. The drafts do disclose the State's decisionmaking process in preparing for the meeting, but we are unable to conclude they do so in a way that interferes with that process, prematurely discloses a state policy or strategy, or could confuse the public on the State's position. *See Trentadue*, 501 F.3d at 1228 ("[I]nformation is not protected simply because disclosure would reveal some minor or obvious detail of an agency's decisionmaking process.").[7] We find these documents fail to satisfy the requirements of the deliberative process privilege, and must, therefore, be disclosed.

## Document No. 7

[¶59] Document No. 7 contains Steve Ferrell's handwritten notes reflecting his personal thoughts, suggestions, and opinions regarding options and policies the State might pursue in its negotiations with the Department of the Interior. The document is pre-decisional and reflects Mr. Ferrell's personal thoughts, suggestions, and opinions, rather than the State's position. Disclosure of this document would likely stifle future honest communication and candor in the decisionmaking process. As a result, disclosure would be contrary to the public interest. We therefore find the document fits within the privilege.

## Document Nos. 9, 11-14

[¶60] Document Nos. 9, 11-14 are drafts of a letter inviting various governors to a sage grouse summit, along with cover e-mails to which the drafts were attached. The draft letters are certainly pre-decisional in that they are not the final letter sent to the governors, but as with the draft agendas, we are unable to find that the draft letters are deliberative. In comparing the final version of the letter that was sent to the governors and provided to Mr. Aland, we are unable to discern any truly substantive difference in the letters that would prematurely disclose a State policy or strategy, or could confuse the public on the State's position. The changes between the drafts and the final letter are primarily wording choices and stylistic changes. We therefore conclude that the draft letters are not protected by the privilege and should be disclosed.

---

[7] In so ruling, we do not intend to suggest that draft agendas are never protected by the privilege. Such drafts may be privileged if they meet the three prongs set forth above. *See supra* ¶¶ 40-47.

[¶61]  With respect to the cover e-mails to which the draft letters were attached when circulated, we find that the e-mails associated with Document Nos. 13 and 14 contain personal opinions and thoughts of authors concerning the sage grouse summit and the letters to governors.  Because the details contained in the e-mails reflect thoughts of the authors and because withholding them is "necessary to protect free discussion of prospective operations and policy," *Freudenthal*, 2010 WY 80, ¶ 36, 233 P.3d at 943 (internal citation and quotation marks omitted)*,* disclosure would be contrary to the public interest.  We therefore find those to be protected by the privilege.

**Document Nos. 15-18**

[¶62]  Document Nos. 15-18 are drafts of a letter from the Governor to Secretary Salazar thanking him for co-hosting the sage grouse summit, along with the cover e-mails to which the letter was attached.   These drafts contain personal suggestions and recommendations of policy staff members and, in contrast to the letters discussed above, the record does show substantive differences between the drafts and the final letter that was sent to the Secretary, which differences could prematurely disclose a state policy or strategy, or confuse the public on the State's position or strategy.  Disclosure of these documents would be contrary to the public interest because it is likely to chill future candid discussion and therefore harm the quality of government decisionmaking.  We thus conclude that these draft letters, along with the e-mail associated with Document No. 18, which was likewise withheld, are protected by the privilege.

**Document Nos. 19-22**

[¶63]  Document Nos. 19-22 are drafts of a letter from the Governor to various governors regarding the Sage Grouse Task Force.  These drafts contain personal suggestions and recommendations of policy staff members, and the record shows substantive differences between the drafts and the final letter sent to the governors, which differences could prematurely disclose a State policy or strategy, or confuse the public on the State's position or strategy.  Again, disclosure of these documents would be contrary to the public interest for the same reasons as Document Nos. 15-18.  We thus conclude that these draft letters are protected by the privilege.

**Document Nos. 23-38, 43-45**

[¶64]  Document Nos. 23-38, 43-45 are drafts of the Governor's May 24, 2012 letter to Secretary Salazar regarding grizzly bear management, along with the e-mails to which the draft letters were attached.   These drafts contain personal suggestions and recommendations of policy staff members, and the record shows substantive differences between the drafts and the final letter sent to the Secretary, which differences could prematurely disclose a State policy or strategy, or confuse the public on the State's

23

position or strategy. Because disclosure of these documents would risk confusing the public as to the State's position and would likely discourage the give and take necessary to produce a final, well-reasoned opinion, disclosure is contrary to public policy. We thus conclude that these draft letters are protected by the privilege.

[¶65] With respect to the cover e-mails to which the draft letters were attached when circulated, the privilege log shows that many were disclosed. Of those that were not disclosed, we find that the e-mails associated with Document Nos. 44 and 45 are not deliberative and should be disclosed. The remaining withheld e-mails contain personal opinions and thoughts of authors concerning the letter and policy and strategy options, and, for the reasons stated in the preceding paragraph, disclosure would be contrary to public policy. We therefore find those to be protected by the privilege.

## Document No. 39

[¶66] Document No. 39 is a typed document sent from Steve Ferrell to another staff member containing talking points for a Wyoming Stock Growers Association meeting. The State has characterized the document as a draft document, but the cover e-mail to which the document was attached reads as follows:

> Per your request here's some talking points for the WSGA. If [sic] found these meetings to be pretty informal, and they usually want you to be brief and leave time for questions. You will probably be sharing your time on the agenda with G&F, FWS, and the Grazing Board. Use your judgment on some of these items (e.g. wild horses). We haven't received formal notification as yet.

[¶67] The attached talking points do not reflect personal opinions or recommendations on policy matters, but rather contain a listing of issues with a note regarding status of each issue and/or plans for each issue. The document does not reflect personal opinions or viewpoints regarding the issues and is essentially a factual recitation. We find the document to be neither pre-decisional nor deliberative, and the privilege therefore does not apply.

## Document No. 40

[¶68] Document No. 40 consists of a two drafts of an e-mail sent in response to constituent correspondence regarding grizzly bear management. The draft e-mails are pre-decisional in that they are not the final correspondence that was sent to the constituent. With respect to whether the drafts are deliberative, we find that the draft at page 97 is deliberative because there are substantive differences between that draft and the final draft that might cause confusion on the State's policy. Because of the potential

confusion, and likelihood of discouraging candid discussion in the future, disclosure of that draft would be contrary to public policy. With respect to the draft at page 96, we are unable to find that the draft is deliberative. In comparing the final version of the e-mail sent to the constituent and provided to Mr. Aland, we are unable to discern a substantive difference that would prematurely disclose a State policy or strategy, or could confuse the public on the State's position. We therefore conclude that the draft at page 96 is not protected by the privilege and should be disclosed.

**Document Nos. 41-42**

[¶69] Document Nos. 41-42 are notes regarding constituent correspondence that reflect the personal thoughts, recommendations and opinions of staff members on how to respond to a particular constituent letter. Disclosure of these documents would potentially chill the necessary discourse which must occur for the government to make well educated and rational decisions. We find that the notes are pre-decisional and deliberative and disclosure would be contrary to public policy, therefore the documents are protected by the privilege.

[¶70] Having completed our review of the documents withheld on grounds of the deliberative process privilege, we next turn to a discussion of the two remaining documents, those which the State withheld as protected by the attorney-client privilege.

### III. Do the documents withheld fall within the attorney-client privilege?

[¶71] The State withheld three documents on grounds that they were protected by the attorney-client privilege. On appeal, only two of those documents remain in dispute: Document No. 1 and Document No. 8. With respect to these documents, Steve Ferrell attested to the following:

> 6. In my position I am also a point of contact within the Governor's Office for matters related to wildlife and endangered species litigation. In this capacity, I communicate with attorneys in the Attorney General's Office and assist in the litigation.

> 7. Document No. 1, p. 1 (filed under seal), are my notes of a conversation I had with Deputy Attorney General Jay Jerde about litigation in which the State of Wyoming is involved over wolves. The notes contain legal advice Mr. Jerde gave me regarding the litigation.

> . . . .

13. Document No. 8, pp. 12-13, is a memorandum I drafted following a conversation I had with Deputy Attorney General Jay Jerde about wolf litigation in which the State of Wyoming is involved. The notes contain Mr. Jerde's legal advice.

[¶72] Based on our review of the documents, we found Document Nos. 1 and 8 to be as Mr. Ferrell described. Document No. 8 is a memorandum from Mr. Ferrell, who is a policy advisor in the Governor's Office, to the Governor's policy director, essentially summarizing the legal advice Mr. Ferrell had received from counsel.

[¶73] Mr. Aland presents a number of arguments for why Document Nos. 1 and 8 should not be protected by the attorney-client privilege. He argues first that the State violated the WPRA by failing to cite to the specific statute that creates the attorney-client privilege when it identified the documents as privileged legal communications in its privilege log. Specifically, he cites to the WPRA's requirement that:

> If the custodian denies access to any public record, the applicant may request a written statement of the grounds for the denial. The statement shall cite the law or regulation under which access is denied and shall be furnished to the applicant.

Wyo. Stat. Ann. § 16-4-203(e).

[¶74] The privilege log the Governor's Office provided for the documents it withheld from Mr. Aland specified that Documents Nos. 1 and 8 were withheld as "privileged legal advice." The log did not cite to Wyo. Stat. Ann. § 1-12-101(a)(i), the Wyoming statute that adopts the attorney-client privilege. We agree with the district court's rejection of Mr. Aland's argument:

> The Governor did not violate [Wyo. Stat. Ann. § 16-4-203(e)]. The reference to attorney client privilege sufficiently provided Mr. Aland notice of the grounds for the denial without citation to Wyoming Statute section 1-12-101(a)(i). Mr. Aland's argument that there must be more information to satisfy the WPRA's exception must fail, as more than adequate facts and reasons were given as to the subject matter and nature of the communications. Mr. Aland asked for very specific information, the responses matched his inquiries, and the subject matter and persons involved in the exchanges have been made known to him in the responses. To require more

26

here to support the log entry and assertion of attorney client privilege would obviate the privilege itself.

[¶75] Mr. Aland next contends that the communications were not attorney-client privilege because they did not involve communications with an attorney. With respect to Document No. 1, Mr. Aland contends this was only handwritten notes by one individual, who is not an attorney. This argument ignores the substance of those handwritten notes. They were notes taken during a conversation with legal counsel and represented a record of the attorney's communication with his client. With respect to Document No. 8, Mr. Aland contends the document did not involve attorneys at all and was instead a communication between two non-lawyers. This argument ignores both the substance of the document and the relationship between the memorandum's author and the recipient. The Attorney General's Office is the legal advisor of all elected and appointed State officers. Wyo. Stat. Ann. § 9-1-603(a)(v) (LexisNexis 2013). The memorandum recounts the legal advice a deputy attorney general communicated to a policy advisor in the Governor's Office, and then forwards that advice to the Governor's policy director. The memorandum contains no indication that the advice was forwarded beyond the Governor's Office, which was the client in the communication, and we can therefore find no basis to reject the privilege.

[¶76] Finally, Mr. Aland suggests that the Governor's Office waived the attorney-client privilege by disclosing other documents relating to the same subject matter. We find no support for this argument in the record. There is no indication that the records the State disclosed contained the withheld legal advice or that the Governor's Office shared the legal advice with anyone outside the office.

[¶77] The State has met its burden of showing that Document Nos. 1 and 8 are protected by the attorney-client privilege and we therefore hold that the documents were properly withheld.

## CONCLUSION

[¶78] We hold that the WPRA incorporates the deliberative process privilege as a ground to exempt documents from disclosure under the Act. As detailed above, we conclude that some of the documents were properly withheld under the deliberative process privilege but that others are outside the scope of the privilege's protection and must therefore be disclosed. We also uphold the district court ruling with respect to the documents withheld under the attorney-client privilege. Affirmed in part and reversed in part.